RECEIVED
IN LAKE CHARLES, LA
JUN 17 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| MURRIL WILLIS, *individually and on behalf of Amanda Willis*, ET AL. | : | DOCKET NO. 08-127 |
| VS. | : | JUDGE TRIMBLE |
| CENTRAL MUTUAL INSURANCE CO., ET AL. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM ORDER

Defendants have filed a Motion to Compel [doc. 18] in which they seek to obtain production of raw data from the testing of plaintiff by a non-testifying consultant, Dr. Lawrence Dilks. The underlying matter is a suit for damages related to a motor vehicle accident by which it is alleged that minor child Amanda Willis, among other things, suffered head and/or brain injuries. Dr. Dilks is a neuropsychologist hired by plaintiffs for the purpose of consulting with plaintiffs and their attorney in preparation for trial.

Defendants concede that pursuant to Fed. R. Civ. P. 26(b)(4)(B), the "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial" are normally protected from discovery by interrogatories or deposition. Defendants note that discovery of the information sought may be allowed pursuant to the Rule "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(B)(ii).

Defendants assert such circumstances exist in this case. In support defendants submit the affidavit of Dr. Jill Hayes, retained by them to conduct a neuropsychological evaluation of

plaintiff Amanda Willis. Dr. Hayes avers that the testing by Dr. Dilks, which was the testing most temporally proximal to the incident underlying this litigation is especially relevant to provide a baseline for comparison of other neurological test results and would illustrate whether results across sources were consistent. Dr. Hayes also avers that the data collected by Dr. Dilks is essential for determining whether plaintiff Amanda Willis's test scores show gains due to "practice" from being retested with the same or similar instruments on more than one occasion.

As an analogous case, defendants cite *Pearl Brewing Co. v. Jos. Schlitz Brewing Co.*, 415 F. Supp. 1122 (S.D. Tex. 1976). In *Pearl Brewing Co.*, one issue before the District Court was whether the detailed structure of a computer model created by non-testifying experts was discoverable under the federal rules. 415 F. Supp. at 1134. The court allowed discovery of the computer model based on the exceptional circumstances allowance in Fed. R. Civ. P. 26(b)(4)(B).

The court noted two reasons underpinning Rule 26(b)(4)(B). According to the *Pearl Brewing* court "[t]he basic premise of the doctrine . . . is that permitting discovery of experts is unfair inasmuch as it is the equivalent of taking another's property without proper compensation. . . . There is the additional danger, beyond any consideration of proper compensation, that such discovery would afford the opportunity to take unwarranted advantage of an adversary's trial preparation." 415 F. Supp. at 1138 (citing *Smith v. Hobart Mfg. Co.*, 188 F. Supp. 135 (E.D. Pa. 1960); *Walsh v. Reynolds Metals Co.*, 15 F.R.D. 376 (D. N.J. 1954)).

The court noted that in the matter before it, the defendant did not seek to develop its case based on the evidence of plaintiff's non-testifying expert or to avoid expense. Instead, the court found defendant sought only the mechanical methods, tests, procedures, assumptions, and

comparisons which would support the testimony of the testifying trial expert, Dr. Massey. The court noted that Dr. Massey had expertise in economics and oversaw the development of a computer statistics program. However, two non-testifying experts provided the computer technology and programming expertise utilized to create the computer model. Thus, the court found that the work of the non-testifying experts was a "mechanical extension" of the testifying expert's work and that defendant's expert could not adequately understand the model and computer program without discovery or inordinate expense because of the use by the non-testifying experts of otherwise indecipherable short hand codes and symbols. The court found that without the computer model discovery defendant could not adequately cross-examine plaintiff's expert on other discovery provided, specifically, printouts and intermediary computer output. Accordingly, the court allowed the discovery of the system documentation for the program developed by the two non-testifying experts and allowed defendant to depose these experts.

Defendants in the instant case argue that their request is narrower that in *Pearl Brewing Co.* because they seek only the raw data collected by Dr. Dilks, not to depose him. Defendants further maintain that they cannot obtain this raw data from any other source.

Plaintiffs counter that the affidavit of defendants' expert Dr. Hayes establishes only that the data collected by Dr. Dilks is relevant. Plaintiffs argue that more is needed to show exceptional circumstances.

Plaintiffs cite *Carroll v. Praxair*, 2007 WL 437697 (W.D. La. 2007), a Western District of Louisiana case in which Magistrate Judge Wilson considered whether plaintiff could depose a defendant's non-testifying expert. The non-testifying expert was a neurologist who performed

an independent medical examination of the plaintiff. Plaintiff sought to depose the neurologist concerning the examination.

The court noted that discovery of a non-testifying expert by deposition or interrogatory is prohibited by Fed. R. Civ. P. 26(b)(4)(B) in the absence of exceptional circumstances.[1] The court noted that the burden on a party seeking to show exceptional circumstances is substantial and that the primary purpose of requiring disclosures by testifying experts is for proper cross-examination, a consideration absent in the case of a non-testifying expert. *Carroll*, 2007 WL 437697, *2 (citing *Hoover v. U.S. Dep't of the Interior*, 611 F.2d 1132, 1142, 1142 n.13 (5th Cir. 1980)). The court then looked to four rationales for limiting discovery of non-testifying experts' information as identified in the case *Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 460 (S.D. NY 1995):

> First, counsel's interest in obtaining advice to properly evaluate and present their clients' positions without fear that every consultation with an expert might "yield grist for the adversary's mill"; second, "that it would be unfair to allow a party to benefit from the effort and expense incurred by the other in preparing its case"; third, that compelling experts' testimony "might diminish the willingness of experts to serve as consultants, and . . . that it is unfair to the experts"; and fourth, that "permitting one party to call an expert previously retained or consulted by the other side entails a risk of very substantial prejudice stemming from the fact of the prior retention, quite apart from the substance of the testimony."

*Carroll*, 2007 WL 437697, *3 (quoting *Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 460 (S.D. NY 1995)).

Finally, the court observed that exceptional circumstances have been found where the party could not obtain equivalent information from other sources. *Id.* (citing *In re Shell Oil*

---

[1] In *Carroll*, plaintiff did received a detailed written report by the examining expert to which she was entitled pursuant to Fed. R. Civ. P. 35.

*Refinery*, 132 F.R.D. 437, 442 (E.D. La. 1990). The court remarked that substantially equivalent information would be available through the regular treating physicians of plaintiff. The court concluded that plaintiffs' "more likely use . . . would be to show that the defendant's expert agreed with the plaintiff's physicians as to Carroll's health and symptoms, in order to undermine a defense argument rebutting such facts." *Id.*

Plaintiffs in the instant case observe that plaintiff Amanda Willis's treating physician, Dr. Larry Pollock, will testify at trial. Plaintiffs represent that defendants have Dr. Pollock's records and will soon depose him. Plaintiffs argue that defendants have not shown exceptional circumstances because defendants will have information regarding Amanda Willis's neuropsychological abilities and impairments through discovery provided by Dr. Pollock and defendants' own expert. Finally plaintiffs note that any bias due to practice would prejudice plaintiffs not defendants because her results would be artificially better.

Plaintiffs then address the cases cited by defendants. With regard to *In re Shell Oil Refinery*, 132 F.R.D. 437[2], a class action related to an oil refinery explosion, plaintiffs assert that the case is actually favorable to them because the court prevented discovery of information collected in an investigation by two non-testifying experts shortly after the incident in question. The court found that plaintiffs could obtain substantially the same information through their own experts. The court distinguished the *Pearl Brewing Co.* case because the information sought would not aid the plaintiffs in understanding how defendant's testifying experts would substantiate their conclusions at trial.

Plaintiffs in the instant case distinguish *Pearl Brewing Co.* on substantially the same grounds noting that no testifying expert would render any opinion or present any evidence that

---

[2] It should be noted that defendants' rely on this case only for a statement of the rule embodied in Fed. R. Civ. P. 26(b)(4)(B).

5

relied on information from Dr. Dilks, plaintiffs' non-testifying expert.

Having considered these authorities, the court finds that defendants have carried their burden of demonstrating exceptional circumstances to overcome the general rule that a party may not discover facts or opinions held by a non-testifying expert. Although defendants have access to the raw data from neurological tests performed by their expert and may compare that information to information submitted by plaintiff's testifying expert, the raw data created in the testing conducted by Dr. Dilks is particularly relevant and necessary for the interpretation of any later tests. The *Carroll* case relied on by plaintiffs is thus distinguishable because defendants cannot obtain the raw data collected by Dr. Dilks from other sources. Additionally, the factors set forth in *Rubel* and adopted in *Carroll* do not dictate a different result because defendants do not seek to depose Dr. Dilks or to retrieve opinion evidence from him.

Accordingly, Defendants' Motion to Compel is GRANTED.

Thus done and signed in chambers in Lake Charles, Louisiana, this 16th day of June, 2009.

KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE